IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                                      Case No:  19-CR-1614 JB

MATEO MAESTAS,

        Defendant.

**<u>DEFENDANT MATEO MAESTAS' SENTENCING MEMORANDUM</u>**

COMES NOW the Defendant, Mateo Maestas, by and through his counsel of record, Ahmad Assed, Esq., and, hereby respectfully moves this Court for the imposition of the lower end of the sentencing range pursuant to the Rule 11(c)(1)(C) plea agreement negotiated by the parties as a reasonable sentence in light of *United States v. Booker* 543 U.S. 220 (2005) and 18 U.S.C. §3553.  In support thereof, Mr. Maestas states:

**I.   Introduction, Facts of the Case, and History.**

This case involves the tragic accident that occurred on April 16, 2019 in Laguna, New Mexico. Mateo Maestas, the defendant in this case, is a kind and compassionate twenty-two year old man who made a horrible mistake that can never truly be repaid.  Mr. Maestas hopes to shed peace onto to the family, who has suffered as a result, in his every action afterwards.

Mr. Maestas was abandoned at his vehicle on the date of the accident in the middle of nowhere by his friends who left him by himself on the side of the highway over a minor argument. He made a terrible error in attempting to drive back to safety, one for which he will be haunted by for the rest of his life. He called out for help to one of his loved ones, but he was too far away to be able to help.

1

This one tragic day in Mr. Maestas' life has caused so much pain to two families: to the Murray family, who lost a beloved mother and wife, and to Mr. Maestas' family, who bears the weight of the guilt over the loss of a treasured member of the community, and the pain from losing Mr. Maestas in their household as a result of this criminal case. No amount of incarceration will heal the community of that loss, and while there may be an understandable emotional reaction to impose a harsher sentence as retribution for the loss that was suffered, the factors contemplated under 18 U.S.C. § 3553(a), as thoroughly detailed in the Presentence Report, warrant a sentence at the lower end of the sentencing range under the Rule 11(c)(1)(C) plea agreement.

Mr. Maestas has a criminal history of *zero*: that is, prior to this case, he has never been convicted of a crime, other than a single speeding ticket. He is young, hard-working and educated, and aspires to help others in his future as he has been doing during his counseling sessions while this case has been pending. The presentence report, which has extensively covered the nature of the offense and the defendant's history, calculated advisory guidelines that are far below what the Rule 11(c)(1)(C) plea agreement dictates at thirty (30) to thirty-seven (37) months. It concludes that a sentence within the Rule 11(c)(1)(C) range is ultimately warranted in consideration of the factors under 18 U.S.C. § 3553(a)(1)-(7). Given the low advisory sentencing range calculated, Mr. Maestas respectfully requests that the Court impose a sentence at the low end of the 11(c)(1)(C) range to be proportionate to the guideline range and to impose a sentence that is sufficient, but not greater than necessary, to reflect the purposes for sentencing outlined under 18 U.S.C. § 3553.

## II. The History and Characteristics of the Defendant.

Mr. Maestas was born on July 1, 1997 to his parents, Larry Maestas, and Marshie Pablo, in Albuquerque, New Mexico. He is a tribal member of the Navajo Nation, and has lived around Cuba, New Mexico, for most of his life. Mr. Maestas was raised in a loving household, and has two younger siblings, who are still in high school. He has a positive relationship both with his parents and siblings, and with his community. Mr. Maestas graduated with his high school diploma from Cuba High School in 2015, and intends to continue his education in hospitality, because he enjoys helping others and providing customer service. Indeed, Mr. Maestas has worked in customer service, primarily in the hotel industry, for his entire adult life. After he serves his sentence, he would like to pursue a career path in Hotel Management through Central New Mexico (CNM). He is a bright young man with a promising future, who had never before even grazed the criminal justice system but made a grave error in his judgment on one day of his life that ended in tragedy.

Mr. Maestas is no stranger to tragedy himself. In 2015, his grandfather and revered local healer, Wilson Joe Chiquito, was murdered in his own home and robbed of $3,000 and jewelry. Mr. Maestas knows that, while certainly not the same, the kind of pain that the Murray family feels now is similar to how he felt when he lost his grandfather, with whom he had a very strong relationship. Although there is no excuse for his actions on the date of the accident, Mr. Maestas was heavily impacted by the loss of his grandfather, and, at the time when this accident occurred, he had unfortunately fallen into a pattern of using alcohol in an unhealthy manner. He was forthright with his probation officer when he discussed his drinking habits, and that he "was struggling with alcohol use." (Doc. 38 at 9).

However, the accident shook Mr. Maestas to his core. As he suffered from his own physical injuries that left him unable to walk and for which he required physical therapy for several months, he did not complain but used this time as an opportunity to mend some of the broken pieces in his life and grow from them instead. He stopped using alcohol altogether, as evidenced by the fact that every drug test he submitted to probation, since the initiation of this case, was negative. He has likewise complied with all conditions of probation since they were instated. He actively participates in alcohol counseling, attends Alcoholics Anonymous meetings, and shares his story as a way of educating others on the dire consequences that abusing alcohol can have. He has also turned to his faith in God in his quest for redemption and healing. He has been a guiding force for his friends, both before and after the accident occurred. They have trusted him and leaned on him for support and care, and he has been a compassionate and generous friend to them in return.

That Mr. Maestas has accepted responsibility, and his remorse for the consequences of his actions is indisputable. From the very beginning, he has been cooperative with the authorities and has participated and complied with all aspects of the case. He began counseling on his own accord. Mr. Maestas willingly informed his probation officer when he completed physical therapy, then reported straight to La Posada Halfway House on the day he was instructed. He has taken other actions on his own volition, such as his renewed devotion and submission to a moral authority, meaningfully connecting with others to prevent future incidents like his own, and to improve himself and show his remorse through actions, not just words.

Mr. Maestas could only control the action he took in deciding to drive a vehicle on April 16, 2019. He could not control the identity of the people who were harmed as a result of his actions. While the United States has asked for a departure or variance for the upward end of the

11(c)(1)(C) range due to the uncharged conduct for the two injured passengers, the uncharged conduct is a factor that is solely a matter of chance completely unrelated to malice or any intention whatsoever. Indeed, the Presentence Report calculates the points for the specific offense characteristics, victim related adjustment, and adjustment for role in the offense at zero (0). (Doc. 38 at 6).

### III.     The Statutory Framework of Federal Sentencing after *United States v. Booker*, 543 U.S. 220 (2005).

18 U.S.C. § 3553(a) requires the Court to impose a sentence sufficient, but not greater than necessary, to comply with the purposes of federal sentencing, and imposes a statutory duty to consider:

>   (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>   (2) the purposes of criminal punishment;
>   (3) the kinds of sentence available;
>   (4) the Guidelines range;
>   (5) Sentencing Commission Policy Statements;
>   (6) the need to avoid unwarranted sentencing disparities; and
>   (7) the need to provide restitution.

A District Court's duty in sentencing is to impose a sentence in conformity with the parsimony principle in Section 3553.  *See United States v. Smart*, 518 F.3d 800, 810 (10th Cir. 2008) ("[D]istrict Courts are bound to 'impose a sentence sufficient, but not greater than necessary' to comply with [the sentencing factors in Section 3553(a)(2)].")  The purposes of federal sentencing enumerated in 18 U.S.C. §3553(a)(2) are the need for the sentence imposed:

>   (a) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>   (b) to afford adequate deterrence to criminal conduct;
>   (c) to protect the public from further crimes of the defendant; and
>   (d) to provide the defendant with needed educational or vocational training, medical care or other correctional treatment in the most effective manner.

*United States v. Booker*, 543 U.S. 220 (2005); *United States v. Kristl*, 437 F.3d 1050 (10th Cir. 2006); *United States v. Sanchez-Juarez*, 446 F.3d 1109 (10th Cir. 2006).

In *Gall v. United States*, 128 S. Ct. 586 (2007), the Court clarified that federal sentencing should proceed in four basic steps: (1) Guidelines calculation, (2) Section 3553(a) analysis, (3) extent of variance from advisory sentencing range if an out-of-guidelines sentence is appropriate, and (4) justification for the out-of-guidelines sentence to afford meaningful appellate review. *Gall v. United States*, 128 S. Ct. at 595-597.

### III. Rule 11(c)(1)(C) Agreement

After fully cooperating with the United States in their investigation of the accident and fully complying with all conditions of release, Mr. Maestas entered into a plea agreement under Fed. R. Crim. P. 11(c)(1)(C), in which the parties "agree that a specific sentence or sentencing range is the appropriate disposition of the case." In entering the plea agreement, Mr. Maestas was aware that the sentencing range contemplated was subject to being accepted or rejected by the Court or deferred until the presentence report was submitted. Fed. R. Crim. P. 11(c)(3)(A).

The Rule 11(c)(1)C agreement first outlines the maximum penalty for his offense, a violation of 18 U.S.C. §§ 1112 and 1153, for Involuntary Manslaughter on Indian Country, and imprisonment for not more than eight (8) years, a term of supervised release to follow incarceration of not more than three (3) years, a mandatory special penalty assessment of $100.00, and restitution. Mr. Maestas admitted to the following:

> On or about April 16, 2019, I, Mateo Maestas, caused the death of Jane Doe and serious bodily injuries to minor victims Jane Doe 2 and Jane Doe 3 by operating a motor vehicle without due caution and circumspection and with wanton disregard for human life when I knew or should have know[n] that my conduct imperiled the life of others. The incident occurred within the exterior boundaries of the Laguna Pueblo, Indian Country. I am a registered member of the Navajo Nation, which is a federally recognized Indian Tribe. Specifically, on April 16, 2019, I drank excessive amounts of alcoholic beverages with friends and became intoxicated. It was later

>determined that my alcohol content of my blood was .19 g/100 mL after the accident. While I was intoxicated, I drove my car head on into the vehicle operated by Jane Doe and occupied by her two minor children, Jane Doe 2 and Jane Doe 3. I knew or should have known that driving while intoxicated recklessly imperiled the lives of others. By driving while intoxicated, I recklessly imperiled the lives of others. By driving while intoxicated and recklessly, I acted without due caution and circumspection and with wanton and reckless disregard for human life. By driving while intoxicated and recklessly, I acted without due caution and circumspection and with wanton and reckless disregard for human life. Through my actions, I unlawfully killed Jane Doe and caused serious bodily injuries to Jane Doe 2 and 3.

(Doc. 32 at 4-5). This factual basis to which Mr. Maestas admitted amounted to a plea of guilty to Count 1 of the Indictment for violation of 18 U.S.C. §§ 1112 and 1153, Involuntary Manslaughter in Indian Country, with the elements being:

> *First*: The Defendant caused the death of Jane Doe;
> *Second*: Jane Doe was killed during the commission of an unlawful act not amounting to a felony, that is driving while intoxicated as charged in the indictment or the victim was killed while the defendant was committing a lawful act in an unlawful manner, or without due caution and circumspection, which act might produce death;
> *Third:* The incident occurred in Indian Country;
> Fourth: Defendant is an Indian.

*Id.* at 3-4. The parties agreed that a "specific sentence of 60 to 96 months is the appropriate disposition in this case." *Id.* at 5. In entering this plea, Mr. Maestas agreed "not to seek a downward departure or variance from the specific sentence [of] 60 to 96 months as agreed to by the parties pursuant to Rule 11(c)(1)C) of the Federal Rules of Criminal Procedure," and if he did, in fact, seek a departure or variance, "the United States shall have the right to treat this plea agreement as null and void and to proceed to trial on all charges before the Court." *Id.* at 7.

V.      **Factors Supporting Imposition of the Low End of the 11(c)(1)(C) Range**

While the United States has moved for an upward departure under USSG §§ 5K2.14 and 5K2.21 by nine (9) levels, to support a sentencing range of 78-97 months, and an upward variance under the 18 U.S.C. § 3553(a) factors, "due to the unique nature and circumstances of this offense

7

and the Defendant's conduct," (Doc. 45 at 16), Mr. Maestas cannot argue for a departure or variance under the plea agreement despite the low guideline range calculated by the Presentence Report. However, the upward departures sought by the United States are duplicative and do not serve the purposes of sentencing. Mr. Maestas offers the following grounds supporting a sentence at the low end of the 11(c)(1)(C) range:

    a. *Criminal History, Substance Abuse, and Remediating Factors*

Unlike many in the criminal justice system, and particularly those with prior DWI convictions in the State of New Mexico, who end up in Mr. Maestas' position, Mr. Maestas has no criminal history whatsoever. His total criminal history is zero (0). His Criminal History category under the United States Sentencing Guidelines was calculated at I. Mr. Maestas made one singular, grave error that has impacted him tremendously. Unlike the United States' characterization of Mr. Maestas' substance usage, he admitted to probation that he was struggling with alcohol use at the time of the offense, but voluntarily underwent an evaluation by a licensed counselor through The Evolution Group. (Doc. 38 at 9). Mr. Maestas also went through counseling, and currently attends Alcoholics Anonymous group sessions where he shares his story as a way of educating others about the consequences of alcohol abuse. *See* Exhibit A, Letter from Mateo Maestas; Exhibit B, Documentation of Counseling. Mr. Maestas has also completely abstained from alcohol and other substances, as evidenced by the 100% negative drug tests he has submitted, as reported by probation. (Doc. 38 at 9). In his actions, Mr. Maestas shows his commitment to sobriety as one manner of demonstrating his remorse, as this incident has jolted him from falling into the dark path of substance abuse.

Mr. Maestas' prior history of being a law-abiding member of his community coupled with his commitment to sobriety, actively participating in counseling and attending Alcoholics

Anonymous, in an effort to help educate others and prevent future consequences of alcohol abuse, demonstrate that he has not only fully accepted responsibility for his actions but fervently seeks to rectify his prior actions. While his recent and future actions, remorse and intentions cannot ever restore the loss of a human life, same are indicative of his full capacity for redemption and rehabilitation. As the presentence report has provided, the basic offense level for Mr. Maestas' charge is 22. For acceptance of responsibility for the offense under USSG § 3E1.1(a), and his role in assisting the authorities in the investigation and prosecution of his case under USSG § 3E1.1(b), he has earned a decrease in his offense level by three to a total offense level of 19. While the sentencing guidelines would calculate the sentence based on his criminal history level of I, along with the offense level of 19 at 30-37 months, Mr. Maestas respectfully requests this Court to impose a sentence at the low range of his 11(c)(1)(C) agreement at 60 months.

    b. *Community Ties and Responsibilities*

As discussed above, Mr. Maestas has strong family ties and responsibilities. Mr. Maestas was born and raised in New Mexico, and, as a member of the Navajo Nation, has strong, ancient, personal and spiritual ties to his community. He is the oldest of three siblings and, up until the incident, held a steady job at La Quinta Inn in Albuquerque, New Mexico, which required him to commute over an hour each way. Prior to this incident, his family relied in part on Mr. Maestas' salary and household support. Mr. Maestas has been a loving brother, son, and a generous, compassionate friend to many in the community. The Court will hear words of support from Mr. Maestas' mother, Marshie Pablo, his sister, JoDee Maestas, and his friends, including Monique Vigil, Brooke Cayaditto, and Lawana Castillo during the sentencing hearing. His family and community support him so fervently, because they believe wholeheartedly that this criminal case does not define Mr. Maestas. He has been a strong member of his community up until the

date of the incident, and in, spite of the tragedy that occurred, he continued to be a positive role model, responsible, hard working and a pillar of support to those around him.

Between Mr. Maestas' criminal history, his growth in counseling and ability to take on and overcome potential substance abuse issues, at the first instance, along with his strong community ties and responsibilities, under 18 U.S.C. § 3553(a)(1), Mr. Maestas' history and characteristics present a lucid picture of a strong, moral young man who made a grave mistake, but who holds the promise of rehabilitating and restoring the community with the proper tools and handling, as he has already made steps toward on his own accord.

    c.   *Presentence Report Total Recommendation of 41-51 Months*

Mr. Maestas was cooperative and forthright in his interview with probation for his presentence report. The presentence report thoroughly described and detailed each and every appropriate factor in calculating a guideline range for Mr. Maestas' offense. In the Addendum to the Presentence Report, it is noted that the Blood Alcohol Content (BAC) that was recorded was 0.19 rather than the 0.28 that was initially reported. Nonetheless, even with the higher BAC in the original Presentence Report, probation calculated Mr. Maestas' sentence under the United States Sentencing Guidelines at a range of 30-37 months. This range already took into consideration the nature of the offense, which was presented in detail on pages four and five of the Presentence Report. (Doc. 38). The details included the ages and injuries of the two minor children who also occupied the vehicle, that the minors were transported to University of New Mexico Hospital in critical condition, and Mr. Maestas' statements in cooperation with law enforcement immediately after the incident. It also includes victim impact statements with the decedent's husband and the legal guardian of the two minor children. *Id.* at 6.

Further, an addendum was filed after the United States and Mr. Maestas submitted informal objections, which included even greater details as to the nature of the offense. Nonetheless, even including the additional details provided by the United States, Probation did not alter its initial guideline range in the Presentence Report, and only noted that the Court could depart or vary upward, but also deferred to the parties' Rule 11(c)(1)(C) plea agreement of 60-96 months. In the original Presentence Report, the impact of the plea agreement resulted in probation recommending the total basic offense level of 22 with a criminal history of I, and removing the three-level decrease for Mr. Maestas' acceptance of responsibility under USSG §§ 3E1.1(a) and 3E1.1(b). Thus, probation's recommendation considering all factors under the guidelines, including Mr. Maestas' characteristics and the nature of the offense, and in light of the plea agreement under Rule 11(c)(1)(C), calculated to a maximum of 41-51 months.

Given the fact that probation had already considered all factors regarding the nature of the offense, for which the United States has sought upward departures and upward variance, remaining resolute in its total calculation of 41-51 months, below the 11(c)(1)(C) range, it is appropriate and sufficient for the Court to impose a sentence at the bottom of the 11(c)(1)(C) range of 60 months.

VI.  **The United States' Requests for Upward Departures and/or Upward Variance Are Not Appropriate in This Case**

The United States has requested an upward departure for "endangering the public" and acting with "extreme recklessness" pursuant to USSG § 5K2.14, an upward departure for uncharged conduct pursuant to USSG § 5K2.21, and for an upward variance considering the factors under 18 U.S.C. §3553(a). Mr. Maestas will fully respond to this motion for upward departures and variance in a separate pleading but will summarize the argument against such departure and variance herein.

It should first be noted that the United States has insisted that Mr. Maestas' BAC registered at "0.281 mg/DL, which is three times over the legal limit" at the hospital after the accident. (Doc. 45 at 9). However, this measurement the United States has used is deceptive. As Mr. Maestas objected in the Presentence Report and was updated in the Addendum, his BAC, taken by blood sample in a Forensic Toxicology Report, registered at 0.19 g/100 mL, which is the legal measurement for BAC. (Doc. 46 at 1).

The United States uses its 0.28 measurement of BAC throughout its request for an upward departure under USSG § 5K2.14 to show Mr. Maestas' "extreme recklessness," including case law that supports a departure when a defendant has a BAC over three times the legal limit. *See* Doc. 45 at 7-8 (citing *United States v. Pettigrew*, 468 F.3d 626, 641 (10th Cir. 2006); *United States v. Cicero Two Crow*, 124 F.3d 208, 1997 WL 572862 (8th Cir. 1997)). However, Mr. Maestas' BAC was not over three times the legal limit, as the United States has claimed, and the inflammatory nature of this allegation should be stricken as a basis for an upward departure.

The United States also cites case law which considers the defendant's prior DWI convictions as a basis for upward departure for extreme recklessness under USSG § 5K2.14. *See United States v. Jones*, 332 F.3d 1294, 1302 (10th Cir. 2003); *United States v. Whiteskunk*, 162 F.3d 1244, 1248 (10th Cir. 1998); *United States v. Chambers*, 940 F.2d 653, 1991 WL 137232 (4th Cir. 1991). As noted repeatedly herein, Mr. Maestas has zero criminal history. He can't be said to have been put on "notice of [his] propensity to drink and drive and the dangerousness of such conduct," under *Jones*, 332 F.3d at 1302, or otherwise be considered more culpable as "extremely reckless" as a result. Therefore, these cases are inapposite to form a basis for upward departure in Mr. Maestas' case.

Instead of being "extremely reckless," Mr. Maestas merely reacted impulsively after having been put between a rock and a hard place by his friends. He was abandoned at the side of the road in the middle of nowhere. He called out to a friend, whom he specifically told that he didn't "want to be parked here in the middle of nowhere because" he didn't know where he was. He could not give his friend his location for him to be rescued, even if he did make the right decision to wait. As time went by, his friends never returned for him, and he made the terrible mistake of getting behind the wheel and attempting to drive instead of seeking additional help. While he has pleaded guilty to these actions and has agreed that the Government can prove beyond a reasonable doubt that he acted recklessly, the circumstances show that he was not "extremely reckless" but acted mistakenly under his perceived duress at the situation of being abandoned at the side of the road by his friends. Due to these facts and the misleading characterization of the United States' facts, an upward departure is not warranted in this case.

The United States also seeks an upward departure for uncharged conduct pursuant to USSG § 5K2.21 for the injuries sustained by the two minor passengers. Such a departure is unwarranted, because probation had already considered the full extent of the injuries sustained by the minors in the presentence report and resulted in no upward departure. *See* Doc. 38, ¶¶ 8, 10, 12, 13, 16. Indeed, despite the inclusion of details of the two minors' injuries in the nature of the offense, the presentence report concludes: "The probation officer has not identified any factors that would warrant a departure from the applicable sentencing guideline range." *Id.*, ¶ 74. While the injuries sustained by the two minors are also tragic, for one of the minors, L.R., who sustained liver lacerations and spleen injuries, she was unrestrained in the rear seat, and it is unclear what kind of contributory factors that may have had as to her injuries. For that reason, an upward departure as to the injuries sustained by L.R. for uncharged conduct is unwarranted. If any departure is warranted from the guideline range

13

calculated in the presentence report as to either minor's injuries, the difference between the high end of the calculated sentencing range of forty-one to fifty-one (41-51) months and the low end of the 11(c)(1)(C) range of sixty to ninety-six (60-96) months – a two-level departure – is a sufficient departure to account for the factors provided under 18 U.S.C. § 3553(a), in light of the major factors in favor of Mr. Maestas' character and the other surrounding circumstances.

18 U.S.C. §3553(a)(2) looks at the need for the sentence imposed. Mr. Maestas respectfully asks this Court for a sentence of 60 months, which justly reflects the seriousness of the offense, promotes respect for the law, and provides just punishment for the offense. Moreover, a sentence of 60 months, or five (5) years, will afford adequate deterrence to criminal conduct, will protect the public from further crimes, and will provide Mr. Maestas with any needed rehabilitation or education in the most effective manner. 18 U.S.C. § 3553(a)(2)(B) & (C).

### VII.   Conclusion.

Considering all the facts and circumstances of this case, a sentence at the low end of the 11(c)(1)(C) range would be sufficient but not greater than necessary to satisfy the sentencing goals of punishment, deterrence, and protection of the public. Mr. Maestas has attached his own letter accepting responsibility as Exhibit A.  He anticipates that the following people will testify in support of him at his sentencing hearing:  Marshie Pablo, JoDee Maestas, Monique Vigil, Brooke Cayaditto, and Lawana Castillo.

WHEREFORE, Mr. Maestas respectfully requests this Court to enter a reasonable sentence and impose a sentence of probation, and for such other and further relief as the Court deems proper.

Respectfully Submitted,

*/s/ Britany J. Schaffer*
Ahmad Assed & Associates
Ahmad Assed, Esq.
Richard J. Moran, Esq.
Britany Schaffer, Esq.
818 5th St. NW
Albuquerque, NM 87102
Phone: (505) 246-8373
Fax: (505) 246-2930
Attorney for Mateo Maestas

I HEREBY CERTIFY that a true and correct copy of the foregoing was delivered electronically to parties of record, via the CM/ECF system, on this 31st day of December, 2019.

    */s/ Britany J. Schaffer*
Britany J. Schaffer, Esq.
Attorney at Law