IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA,**
   **Plaintiff,**

vs.                                                               Case No:  19-CR-1614 JB

**MATEO MAESTAS,**
   **Defendant.**

## DEFENDANT MATEO MAESTAS' RESPONSE TO UNITED STATES' MOTION FOR UPWARD DEPARTURE AND/OR VARIANCE

COMES NOW the Defendant Mateo Maestas, by and through his counsel of record, Ahmad Assed, Esq., and responds in opposition to the United States' Motion for Upward Departure and/or variance (Doc. 45). In support thereof, Mr. Maestas states that the requested upward departures and variance are unreasonable and do not serve the purposes for sentencing set forth under 18 U.S.C. § 3553(a). Defendant respectfully requests this Court deny the United States' Motion and proceed to sentencing as appropriate in light of the Pre-Sentence Report and the Rule 11(c)(1)(C) plea agreement.

**I.     Introduction**

On June 12, 2019, a federal grand jury returned an indictment against the Defendant charging Involuntary Manslaughter, resulting from a car accident that occurred on April 16, 2019, pursuant to 18 U.S.C. §§ 1153 and 1112. Doc. 15. From the outset, Mr. Maestas has been forthright and cooperative as to the charges being brought against him. On September 5, 2019, the defendant entered a guilty plea pursuant to an 11(c)(1)(C) plea agreement to the single-count Indictment. Doc. 32. The parties agreed that the Defendant would serve a sentence of 60 to 96 months of incarceration. *Id.*

On November 27, 2019, the United States Probation Office disclosed the Defendant's presentence report ("PSR"). The Defendant does not have any criminal history points, which results in

a criminal history category of I. PSR at ¶ 36. After accounting for Acceptance of Responsibility, the Defendant's total offense level was calculated at 19. PSR at ¶ 32. The resulting recommended sentencing range under the United States Sentencing Guidelines ("USSG") is 30 to 37 months. PSR at ¶ 59. Considering the 11(c)(1)(C), probation increased the range to 41-51 months. As described below, this sentence range is sufficient but not greater than necessary to serve the purpose of sentencing, and as stated in Mr. Maestas' sentencing memorandum, (Doc. 47), in consideration for the 11(c)(1)(C), despite the low sentencing range calculated in the pre-sentence report, Mr. Maestas is solely requesting a sentence at the low end of the 11(c)(1)(C) range of 60 months.

### I. The United States' Request for Upward Departure under USSG § 5K2.14 is inappropriate because Mr. Maestas' conduct was not "extremely" reckless.

The United States argues that the Court should grant an upward departure under USSG § 5K2.14, which provides: "If national security, public health, or safety was significantly endangered, the court may depart upward to reflect the nature and circumstances of the offense." The United States seeks a total of a four-level departure under this enhancement: a two-level departure for endangerment to the safety of the public, and a two-level departure for "extreme recklessness." (Doc. 45 at 10).

The United States argues that Mr. Maestas' conduct amounting to involuntary manslaughter, which already contemplates reckless conduct, was "extremely reckless," to warrant such a departure. Such a departure is permissible, but only if the degree of recklessness "exists to such an exceptional level it takes the case outside the "heartland" of usual involuntary manslaughter cases." *United States v. Whiteskunk*, 162 F.3d 1244, 1250 (10th Cir. 1998). In *Whiteskunk*, the Tenth Circuit reviewed the district court's three-level departure based on the following facts:

> (1) [the defendant's] blood alcohol content was more than twice the legal limit;
> (2) she sustained a prior conviction for driving while intoxicated-putting her on notice of her own propensity to drink and drive and the dangerousness of such conduct; and (3) she had at least three opportunities to correct her behavior, first,

>when her keys were confiscated and she was told she was unfit to drive; second, when she was refused service at a bar because of her state of intoxication; and third, when she narrowly avoided an accident with another vehicle just minutes before hitting Mrs. Fleming.

*Id.* at 1252–53. However, even with the factual basis being provided, the Tenth Circuit remanded back to district court, finding: "Even though the district court articulated a factual basis for departing from the Guideline range, this does not automatically suffice to explain the degree of departure." *Id.* at 1253 (citing *United States v. Kalady,* 941 F.2d 1090, 1100 (10th Cir.1991) (district court bears burden of ensuring the record contains enough information to allow an appellate court to determine how the degree of departure was decided). An explanation to or methodological basis for how the district court selected a three-level degree of departure was required in the record, the presentence report, or from the sentencing court. *Id.* "Failure to clearly articulate the basis for the court's degree of departure makes our review of reasonableness difficult if not impossible, and leaves us to speculate as to reasoning that might have been employed by the sentencing court to arrive at the particular sentence." *Id.* (internal quotation and citation omitted).

Even if the district court's factual basis was sufficient, *Whiteskunk*, like the other cases cited by the United States, is distinguishable from Mr. Maestas' case for the following reasons: (1) Mr. Maestas has not sustained a prior conviction for driving while intoxicated, and was therefore not put on notice of his own propensity to drink and drive, and the dangerousness of such conduct; and (2) Mr. Maestas did not have an opportunity to correct his behavior, since he was abandoned without a perceived other alternative to driving. Moreover, the United States is seeking a total of a four-level departure from the Sentencing Guideline range from 30-37 months to a total of 46-57 months, whereas the three-level departure in *Whiteskunk*, a more extreme set of facts that was not upheld, only would have increased the sentence to 24 months.

The United States also cites *United States v. Jones*, 332 F.3d 1294 (10th Cir. 2003). This case is distinguishable from Mr. Maestas' case for the plain fact that three family members were killed, whereas there was only one death in this case. *See United States v. Whiteskunk*, 162 F.3d 1244, 1250 (10th Cir. 1998) ("Multiple deaths resulting from defendant's conduct is an exception to this general rule, and presents a permissible ground for departure from the standard involuntary manslaughter Guideline range. However, multiple deaths did not occur in this instance. Accordingly, if the district court based its decision to depart on the fact a death resulted, it was error."); *see also United States v. Wolfe*, 435 F.3d 1289, 1300–01 (10th Cir. 2006) ("If the district court, on remand, again determines that Wolfe's conduct was excessively reckless, then the court could not depart upward a second time based upon its determination that that same conduct also posed a threat to public safety."). As the United States provides in its motion, the basis for finding extreme recklessness was that Defendant's BAC registered at .266, and he had multiple prior DWI convictions that placed him on notice of his propensity to drink and drive and the dangerousness of such conduct. As noted in the Sentencing Memo, Mr. Maestas' BAC was stated by the United States in the Motion as ".281 mg/DL,"[1] as more than "three times over the legal limit." (Doc. 45 at 9). However, in the forensic report, Mr. Maestas' BAC, collected by blood sample, registered at .19 g/100 mL, which is not more than three times over the legal limit. *See* Forensic Examination Results, attached hereto as Exhibit A; *see also* Plea Agreement, Doc. 32 at 4.

---

[1] It should be noted that Mr. Maestas' UNMH medical records reported an ethanol reading of 281 mg/DL; however, this reading is not a forensic toxicology test that was accredited by the American Board of Forensic Toxicology and there exist potential reliability and authentication issues with the medical records not present with the Forensic Toxicology Report. Moreover, the Plea Agreement itself, as drafted by the United States, provides the BAC of .19 g/100 mL.

While Mr. Maestas did engage in reckless behavior for which he has pleaded guilty, as encompassed by the Involuntary Manslaughter charge, this conduct does not qualify as "extremely reckless" under USSG § 5K2.14. The United States relies on two factors in other cases that do not apply to this case: (1) the erroneous BAC being "over three times the legal limit," and (2) prior DWI convictions placing the defendant on notice that his conduct was reckless. Unlike the cases cited by the United States, Mr. Maestas made the decision to drive out of perceived duress due to being abandoned in the middle of nowhere on the side of a highway by his friends. These facts do not take Mr. Maestas' conduct outside the "heartland" of the usual involuntary manslaughter cases, but place them squarely within it. Therefore, qualifying Mr. Maestas' conduct as "extremely reckless," and departing upward by four levels without any methodology or notice, as required by *Burns v. United States*, 501 U.S. 129, 138-39 (1991) and Fed. R. Crim. P. 32, would be inappropriate. The Court should deny the United States' motion to depart on this basis.

**II.     An Unspecified Upward Departure for Uncharged Conduct Under United States Sentencing Guidelines § 5K2.21 Is Unclear on Methodology and Would Defeat the Purpose of Plea Negotiations**

As described above, the Court must provide notice to Mr. Maestas if the Court is considering a departure, pursuant to *Burns*, 501 U.S. 129 (1991) and Fed. R. Crim. P. 32. The Court has not yet provided such notice. In addition, the United States does not provide any methodology from the PSR or the record as to how it has reached a total of a nine-level departure from the sentencing guidelines range provided in the Pre-Sentence Report, as required in Whiteskunk, 162 F.3d at 1253.

While Mr. Maestas has conceded in the plea that the two children were injured in the car accident, *see* Doc. 32 at 4-5, he entered the plea agreement with the understanding that the

potential additional charges would not be brought. Nonetheless, the United States seeks to depart from the guideline range by a significant range that pushes the outer boundaries of the 11(c)(1)(C) range to 78-97 months. (Doc. 45 at 6) ("[T]he government requests that the Court depart upwards a total of nine (9) levels: two (2) levels for the danger posed to the public and two (2) levels based on the Defendant's extreme recklessness pursuant to U.S.S.G. §§ 5K2.14; and five (5) levels for uncharged conduct pursuant to §5K2.21. The adjusted offense level would be 28 with an adjusted guideline range of 78 to 97 months.") The PSR included all the information regarding the minors' injuries in the Nature of the Offense section. *See* Doc. 38 at 4-5. Additional points were not merited in the Offense Level, *id.* at 6, despite probation's inclusion of those facts. The United States' inclusion of uncharged conduct, which formed the basis for entering into the plea in the first place, and pushing the outward bounds of the 11(c)(1)(C) plea to 97 months. A sentence above the 11(c)(1)(C) range would negate the plea agreement, and should not be considered.

In addition, the factual distinctions in the case law cited by the United States from Mr. Maestas' case are substantial. In *United States v. White Twin*, 682 F.3d 773, 777 (8th Cir. 2012), a non-binding case, for example, the defendant had pled guilty to assault with a deadly weapon. He was sentenced to 78 months but the court noted that he was "smiling" at sentencing, then added 6 months to make the sentence out to be 84 months followed by 3 years of supervised release. The defendant had a previous criminal history within the tribal courts, which Mr. Maestas does not. More importantly, a two-level enhancement for uncharged conduct included the fact that it was his two children that were involved during the offense. Here, the United States is seeking an unspoken total of a five-level departure for the two children's injuries, when he has expressed remorse from the beginning, and has cooperated from the initiation of the case.

More notably and relevant to the uncharged conduct claim, for at least one of the minors, the child sat unrestrained in the vehicle at the time of the accident. This factor may have been a contributing factor to the extent of the minor's injuries. Mr. Maestas cannot be wholly responsible for the full extent of those injuries, and any departure that is made should not include that conduct.

In *United States v. Zunie*, the defendant was driving while intoxicated when he struck another vehicle head on. The vehicle Zunie collided with included a mother and her two children; but there, the 4-year-old that was injured had severe head injuries sustained in the crash he cannot speak, move, or swallow food and water; the other child suffered from a fractured wrist. The departures that were granted included the fact that the victim sustained permanent or life-threatening bodily injury and two levels were added for making false statements, not under oath, to law enforcement officers. 444 F.3d 1230, 1237 (10th Cir. 2006). In addition, the case was not an involuntary manslaughter case but assault resulting in serious bodily injury, and the defendant had been driving 25 miles over the speed limit and five vehicles were forced off of the road. *Id.* at 1234-1236. Moreover, each case should be treated individually when determining the proper sentence, and the facts and circumstances regarding Mr. Maestas' case are sufficiently distinguishable from *Zunie* that such a drastic departure in *Zunie* is not equivalent to this case.

Should the Court decide to depart from the sentencing guidelines range based on uncharged conduct under USSG § 5K2.21, the Court should significantly take into consideration the fact that the sentencing guidelines are already significantly below the 11(c)(1)(C) range contemplated by the parties. A departure of five levels from the 30-37 month range would calculate to the low end of the 11(c)(1)(C) range already, and further departure is not warranted given the facts and

circumstances of this case and the factors outlined in Mr. Maestas' sentencing memorandum and under 18 U.S.C. § 3553(a), given Mr. Maestas' particular characteristics, as discussed below.

Such a departure is unwarranted, because probation had already considered the full extent of the injuries sustained by the minors in the presentence report and resulted in no upward departure. *See* Doc. 38, ¶¶ 8, 10, 12, 13, 16. Indeed, despite the inclusion of details of the two minors' injuries in the nature of the offense, the presentence report concludes: "The probation officer has not identified any factors that would warrant a departure from the applicable sentencing guideline range." *Id.*, ¶ 74.

### III. A Variance Under 18 U.S.C. § 3553(a) Is Unwarranted as Thoroughly Discussed In Mr. Maestas' Sentencing Memorandum

18 U.S.C. §3553(a)(2) looks at the need for the sentence imposed. Mr. Maestas respectfully asks this Court for a sentence of 60 months, even though time calculated ranged between 30-37 months. Mr. Maestas feels 60 months justly reflects the seriousness of the offense, promotes respect for the law, and provides just punishment for the offense. Moreover, a sentence of 60 months, or five (5) years, will afford adequate deterrence to criminal conduct, will protect the public from further crimes, and will provide Mr. Maestas with any needed rehabilitation or education in the most effective manner. Time in excess of 60 months, every bit of time added, would serve no purpose but would only take away from Mr. Maestas' capacity for employment, which would be necessary to pay restitution as set forth in the Plea Agreement to be later determined by the Court. 18 U.S.C. § 3553(a)(2)(B) & (C). Given the low sentencing range under the pre-sentence report, a sentence of 60 months is more than a sufficient sentence to comport with the factors under 18 U.S.C. § 3553(a). Mr. Maestas' Sentencing Memorandum sets forth all of the factors regarding his characteristics that support a sentence without any variance upward. *See United States v. Hildreth*, 485 F.3d 1120, 1128–

29 (10th Cir. 2007) ("Although the sentencing Guidelines are now advisory, district courts must consider them in reaching sentencing decisions. As we have previously explained, the Guidelines are an expression of Congress's intentions in passing the sentencing laws. Consequently, a district court may not determine 'reasonableness' under § 3553(a) without reference to the fact that the Guidelines represent a critical advisory aspect of the § 3553(a) factors. Moreover, a properly calculated Guidelines sentence will typically reflect an "accurate application of the factors listed in § 3553(a), including the need to avoid unwarranted sentencing disparities under § 3553(a)(6), which we have noted is the purpose of the Guidelines.") (internal quotations and citations omitted); and *United States v. Allen*, 488 F.3d 1244, 1253 (10th Cir. 2007) ("The farther the sentencing court diverges from the advisory guideline range, the more compelling the reasons for the divergence must be.").

The United States has failed to adequately address Maestas' argument that his personal history and characteristics – his age, complete and total compliance in all areas of pre-trial requirements, gainfully employed, zero criminal history, strong family support, sheer regret and admission of guilt – make his likelihood of recidivism minimal, if at all, which in turn fails to prove the merit of 9 levels of upward departure and variance. Mr. Maestas understood that the levels calculated at 30-37 are well under the minimum sentence in the Plea Agreement, but believed that taking more time at a minimum of 60 months instead of 30-37 was a fair increase given his terrible mistake. Taking 30-37 months guideline range and increasing to 96 or 97 months is not a reasonable upward variance. *See contra United States v. Olivas-Gonzales*, No. CR 08-0824 JB, 2008 WL 6049973, at *3 (D.N.M. Nov. 12, 2008) (Browning, J.) (departing downward from a non-violent sentencing range in part because the defendant "is young and does not have any criminal history before this point.").

Mr. Maestas has entered his admission of guilt under the impression that the U.S.S.G. would be used to formulate a reasonable sentence, a sentence that would allow him to reenter society at a still employable age, still healthy and young enough to live a responsible life, serve his community, as well as to have the ability to still care for his family and pay restitution.

Defendant has had four months since the plea was signed by the parties to prove his character, his ability to shift into full responsibility to his family and community, to show up, to do the work, and has not failed in any area whatsoever with probation or any activities, and remains law abiding.  Neither Mr. Maestas nor the community will benefit in any way from the lengthier "adjusted" offense levels being imposed.  60 months would be productive, whereas the more time added would be contrary to that, destructive as he would lose a sense of self and purpose with each passing year.

18 U.S.C. §3553(a)(2) looks at the need for the sentence imposed. Mr. Maestas respectfully asks this Court for a sentence of 60 months, which justly reflects the seriousness of the offense, promotes respect for the law, and provides just punishment for the offense. Moreover, a sentence of 60 months, or five (5) years, will afford adequate deterrence to criminal conduct, will protect the public from further crimes, and will provide Mr. Maestas with any needed rehabilitation or education in the most effective manner. 18 U.S.C. § 3553(a)(2)(B) & (C).

### VII.   Conclusion.

Considering all the facts and circumstances of this case, the United States' motion for departures and/or variance should be denied and a sentence at the low end of the 11(c)(1)(C) range would be sufficient but not greater than necessary to satisfy the sentencing goals of punishment, deterrence, and protection of the public.

WHEREFORE, Mr. Maestas respectfully requests this Court deny the United States' motion for departure and/or variance (Doc. 45), enter a reasonable sentence considering the guideline range under Pre-Sentence Report, the 11(c)(1)(C) Plea Agreement, and the factors under 18 U.S.C. § 3553(a), and for such other and further relief as the Court deems proper.

        Respectfully Submitted,

        */s/ Britany J. Schaffer*
        Ahmad Assed & Associates
        Ahmad Assed, Esq.
        Richard J. Moran, Esq.
        Britany Schaffer, Esq.
        818 5th St. NW
        Albuquerque, NM 87102
        Phone: (505) 246-8373
        Fax: (505) 246-2930
        Attorney for Mateo Maestas

I HEREBY CERTIFY that a true and correct
copy of the foregoing was delivered electronically
to parties of record, via the CM/ECF system,
on this 3rd day of January, 2020.

   */s/ Britany J. Schaffer*
Britany J. Schaffer, Esq.
Attorney at Law